UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Angela Riniker,

       Plaintiff,

v.

                                 Case No. 12-cv-2875 (JNE/TNL)
                                 ORDER

UnitedHealth Group Incorporated,
United Healthcare Services, Inc.,
OptumHealth, LLC,
Price Waterhouse Coopers LLP,
and Tiffany Bredeson,

       Defendants.

This matter is before the Court on Plaintiff Angela Riniker's motion to vacate an

arbitration award and Defendants' motions to confirm the arbitration award. Defendants also

seek attorneys' fees. For the reasons stated below, Plaintiff's motion to vacate is denied and

Defendants' motions to confirm are granted. Defendants' requests for attorneys' fees are denied.

## BACKGROUND

This section recounts the facts as the arbitrator found them. In January 2008, Riniker

began working for Defendant UnitedHealth Group (UHG). In July 2011, she was promoted to a

position where she reported directly to Rosemary Leone and indirectly to Hilary Lyon. Before

and after her promotion, Riniker suffered from back pain. On September 30, 2011, Riniker had

back surgery. While Riniker was on leave after her surgery, Leone reviewed the status of

Rinker's work projects and discovered that Riniker had performance issues. Leone and Lyon

determined that Riniker's performance could be best managed if she were physically present in

the office. On October 6, Rinker was informed that, once she returned to work, she would no longer have the privilege of working from home and was expected to work from the office.

Riniker returned to work in the office on October 10. She was in pain and left work early. On October 11, Riniker requested a medical accommodation, supported by a doctor's note, of working from home until November 11. Leone approved the request. Riniker returned to work full-time from home on October 14. On October 26, Riniker requested intermittent leave under the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq.*, to attend doctors' appointments and other recovery efforts. These requests were approved on November 8 and 17. Riniker was later granted an extension of her FMLA intermittent leave. Because Riniker's work performance did not improve after her return from surgery, Leone placed Riniker on an Elevated Corrective Action Plan (CAP) on November 2. Nine days later, Riniker was placed on a Final CAP. During those nine days, Riniker took no FMLA leave. In December 2011, Riniker sought a second accommodation to work from home three days per week. This request was granted.

In January 2012, Leone and Lyon terminated Riniker for violating UHG's drug policy based on an incident that occurred in November 2011. At the time of the incident, Riniker was working in her office cubicle. She overheard a conversation between a colleague and Defendant Tiffany Bredeson, a consultant from Defendant PricewaterhouseCoopers working with UHG. Bredeson mentioned to the colleague that she had a headache. The colleague offered some Tylenol or Advil. Riniker then offered Bredeson prescription pain medication. Riniker showed Bredeson baggies containing pills that Riniker kept in her cabinet and listed the prescription drugs she possessed. Bredeson believed Riniker's offer was serious, and Bredeson declined.

Later in November 2011, Bredeson told Leone about this incident. On January 5 or 6, 2012, Leone and Lyon asked Bredeson to memorialize the incident, which she did in a brief memo. After receiving the memo, Leone and Lyon talked with Riniker, who said she did not recall offering the drugs to Bredeson and asserted that, "if [she] did, it was a joke." Leone and Lyon understood Riniker's response to be an admission. They terminated her for violation of UHG's workplace drug policy, which prohibits "the unlawful . . . dispensing . . . or other distribution of . . . prescription drugs."

## PROCEDURAL HISTORY

Riniker filed this lawsuit in state court, and UHG removed to this Court on November 14, 2012. The complaint alleges that UHG violated the FMLA and the Minnesota Human Rights Act (MHRA), Minn. Stat. § 363A.01 *et seq*. The complaint also alleges defamation against all Defendants, though the defamation claim is not at issue before the Court. On January 15, 2013, the Court stayed the action pending binding arbitration administered by the American Arbitration Association, in accordance with the terms of the arbitration agreement between UHG and Riniker. On November 20, 2014, the arbitrator denied Riniker's claims and rendered a decision in favor of Defendants. On January 8, 2015, Riniker filed a motion to vacate the arbitration decision. Defendants have filed motions to confirm the arbitration award.

## STANDARD OF REVIEW

Arbitration awards are typically entitled to "an extraordinary level of deference." *Medicine Shoppe Intern., Inc. v. Turner Investments, Inc.*, 614 F.3d 485, 488 (8th Cir. 2010) (quotation marks omitted). "Courts have no authority to reconsider the merits of an arbitration award, even when the parties allege that the award rests on factual errors or on a

misinterpretation of the underlying contract." *Id.* Courts "may not set an award aside simply because we might have interpreted the agreement differently or because the arbitrators erred in interpreting the law or in determining the facts." *Stroh Container Co. v. Delphi Indus., Inc.*, 783 F.2d 743, 751 (8th Cir. 1986). A reviewing court must confirm an arbitrator's award even if it is "convinced that the arbitrator committed serious error, so long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." *McGrann v. First Albany Corp.,* 424 F.3d 743, 748 (8th Cir. 2005) (quotation marks omitted). An "arbitral award may be vacated only for the reasons enumerated in the [Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq*]." *Medicine Shoppe*, 614 F.3d at 489. The relevant provisions of the FAA permit a district court to vacate an arbitration award where the arbitrators "refus[ed] to hear evidence pertinent and material to the controversy," 9 U.S.C. § 10(a)(3), and "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." *Id.* at § 10(a)(4).

Riniker argues that this extraordinary deference should not apply because the arbitration agreement has a clause on the judicial standard of review, which provides: "In actions seeking to vacate an award, the standard of review to be applied to the arbitrator's findings of fact and conclusions of law will be the same as that applied by an appellate court reviewing a decision of a trial court sitting without a jury." Riniker maintains that, under this contractual provision, the Court should review the arbitrator's factual findings for clear error and the legal conclusions de novo. However, the Supreme Court has held that "§§ 10 and 11 provide exclusive regimes for the review provided by the [FAA]," and these review provisions are not "open to expansion by agreement" of the parties. *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 583–84,

4

590 (2008). Thus, if the FAA governs, the less deferential standard of review contemplated in the agreement does not apply.

Riniker argues that the Minnesota Uniform Arbitration Act (MUAA), Minn. Stat. § 572B, and not the FAA, applies and that Minnesota law allows for agreements that alter the judicial standard of review for arbitral awards. Riniker is correct that *Hall Street* left open the possibility that different scopes of review are possible under state law.[1] However, "the construction of an agreement to arbitrate is governed by the Federal Arbitration Act unless an agreement expressly provides that state law should govern." *ING Financial Partners v. Johansen*, 446 F.3d 777, 779 (8th Cir. 2006). If the parties wish to preclude application of the FAA, their intent must be "abundantly clear." *UHC Mgmt. Co., Inc. v. Computer Sciences Corp.,* 148 F.3d 992, 997 (8th Cir. 1998) (holding that the FAA and not the MUAA applied in large part because the "agreement makes no reference to the Minnesota Uniform Arbitration Act or to Minnesota case law interpreting the allocation of powers between arbitrators and courts").

Here, the agreement does not make abundantly clear that the FAA does not apply. There is no provision expressly providing that the arbitration laws of Minnesota or any other state should govern construction, and the agreement makes no reference to the MUAA or Minnesota case law. There is a choice-of-law provision dictating that the "arbitrator will be bound by the applicable law of the jurisdiction under which the dispute arises." However, a generic choice-of-law clause is not sufficient to support an inference that the parties intended for a state arbitration statute to apply. *See id; see also Dominium Austin Partners, L.L.C. v. Emerson*, 248 F.3d 720, 729 n. 9 (8th Cir. 2001).

---

[1] "The FAA is not the only way into court for parties wanting review of arbitration awards: they may contemplate enforcement under state statutory or common law, for example, where judicial review of different scope is arguable." *Hall Street*, 552 U.S. at 590.

5

Riniker suggests that the parties made it abundantly clear that the FAA should not apply through the insertion of the judicial review clause itself. However, if specifying a standard different from those enumerated in the FAA were sufficient to preclude application of the FAA, the Supreme Court would not have held that the FAA applied in *Hall Street*, a case in which the arbitration agreement specified judicial review for "legal error" and did not expressly invoke the FAA's sections on judicial review. 552 U.S. at 580, 590. Moreover, the Supreme Court had not decided *Hall Street* at the time UHG and Riniker entered into the arbitration agreement. It makes no sense to assume that the parties intended to avoid the application of the FAA by agreeing to a clause that did not clearly run afoul of the FAA at the time.

Accordingly, under Supreme Court and Eighth Circuit precedent, the FAA, with its extraordinary deference, applies.

## DISCUSSION

Under the FAA, the Court must confirm an arbitration award, unless the award is vacated, modified, or corrected under § 10 or § 11. 9 U.S.C. § 9. Riniker argues that the arbitrator violated § 10(a)(3) of the FAA by refusing to hear evidence pertinent and material to the controversy and § 10(a)(4) by exceeding his powers. She also argues that the award should be vacated on public policy grounds and, in the alternative, that the arbitration agreement is unenforceable.

### A.  § 10(a)(3)

"A party seeking to vacate an award for misconduct under § 10(a)(3) must show that he was deprived of a fair hearing." *Brown v. Brown-Thill*, 762 F.3d 814, 820 (8th Cir. 2014)

(quotation marks omitted). The paradigmatic § 10(a)(3) challenge is one in which an arbitrator declines to take evidence offered by a party. *See Nat'l Cas. Co. v. First State Ins. Grp.*, 430 F.3d 492, 498 (1st Cir. 2005).

Here, the arbitrator heard testimony during a multi-day hearing and received exhibits and submissions from counsel. Riniker points to no evidence that she sought to introduce but was excluded by the arbitrator. Riniker in effect argues that the arbitrator violated § 10(a)(3) by not expressly discussing certain evidence in his decision and order. However, there is no requirement that an arbitrator discuss all relevant evidence, and "[a]rbitrators are not required to elaborate their reasoning supporting an award." *Lincoln Nat'l Life Ins. Co. v. Payne*, 374 F.3d 672, 675 (8th Cir. 2004) (quoting *Stroh Container*, 783 F.2d at 750).

Riniker also argues that the arbitrator should not have admitted evidence of Riniker's work performance because poor performance was not the stated reason for termination. However, evidence of Riniker's performance may have been relevant to whether UHG had a non-discriminatory reason for taking certain actions, such as revoking Riniker's privilege to work from home. Moreover, even if the arbitrator should not have admitted the evidence, "the admission of irrelevant evidence is not a basis upon which this Court may vacate an arbitration award." *Gedatus v. RBC Dain Rauscher, Inc.*, Civil No. 07-1750, 2008 WL 216297, at *5 (D. Minn. Jan. 23, 2008).

## B.  § 10(a)(4)

"A party seeking relief under [§10(a)(4)] bears a heavy burden." *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068 (2013). "Only if the arbitrator act[s] outside the scope of his contractually delegated authority . . . may a court overturn his determination." *Id.* at 2068

7

(quotation marks omitted). "[A]n arbitral decision even arguably construing or applying the contract must stand, regardless of a court's view of its (de)merits." *Id.* (quotation marks omitted).

Riniker argues that the arbitrator's decision contains several errors and deficiencies in violation of § 10(a)(4). First, Riniker asserts that the arbitrator incorrectly found that Riniker offered Bredeson prescription drugs. However, there was record evidence that she made such an offer, and the Court may not vacate an arbitration award over a factual determination that was based on record evidence. Next, Riniker maintains that the arbitrator exceeded his power by finding that Riniker was terminated for violating UHG's drug policy because the policy prohibits the distribution and dispensation of drugs but not offers of drugs. However, "[t]he normal rule in discrimination cases is that if an employer honestly believes that an employee is terminated for misconduct, but it turns out later that the employer was mistaken about whether the employee violated a workplace rule, the employer cannot be liable for discrimination. If the employer takes an adverse action based on a good faith belief that an employee engaged in misconduct, then the employer has acted because of perceived misconduct, not because of protected status or activity." *Richey v. City of Independence*, 540 F.3d 779, 784 (8th Cir. 2008) (citation omitted).

Here, the arbitrator determined that Riniker's supervisors had "a good-faith belief" that Riniker offered drugs to Bredeson and this offer "violate[d] UHG's policy regarding Alcohol and Drugs in the workplace." In effect, the arbitrator interpreted the policy against drug distribution to cover attempts to distribute drugs. Whether the Court would have interpreted UHG's policy differently is irrelevant. The Court cannot reverse the arbitrator's factual finding that the supervisors applied the policy in good faith, and it cannot vacate the award on the grounds that the arbitrator's interpretation of the drug policy may not have been the best one.

Riniker also argues that the arbitrator accepted UHG's proffered reason for termination—the violation of the drug policy—without considering evidence of an improper motive. However, the arbitrator's decision expressly concludes that there was no evidence of pretext—that is, no evidence that the stated motive for termination masked an improper motive. More specifically, the arbitrator stated that "[n]othing in the record diminishes the legitimacy of UHG's stated basis for termination of Ms. Riniker's employment; nothing in the record substantiates a determination of pretext in any actions taken by UHG." He further concluded that the "adverse employment actions of which Ms. Riniker complains. . . were not related to her alleged disability," and "the actions taken by UHG . . . were not discriminatory and were not retaliations for or reactions to Ms. Riniker's legitimate use of FMLA leave or accommodations requested and granted." Perhaps Riniker would have liked the arbitrator to better explain how he reached these conclusions. But the Court cannot vacate the award because the arbitrator did not more fully explain the reasoning supporting his conclusions. *Lincoln Nat'l Life*, 374 F.3d at 675.

To support the proposition that the arbitrator did not properly understand and apply the law, Riniker relies heavily on a colloquy in which the arbitrator asked the parties whether he should bifurcate the closing to first address the question of "whether or not the [drug policy] incident itself was sufficient basis for termination of Ms. Riniker." The arbitrator explained the basis for the question: "If I make the determination that it was, then I don't think I need to go through the McDonnell Douglas analysis. If I don't, then we get into the question of pretext and damages and what they would be and attorney's fees and other things." Riniker argues that these statements show the arbitrator did not understand the law because the *McDonnell Douglas* analysis is a test for summary judgment, not for deciding ultimate liability in a case, and discrimination law requires consideration of whether an employer had an improper motive for

making an adverse employment decision, regardless of whether the employee violated a workplace policy.

Even if Riniker is correct that the arbitrator misunderstood the law at the time he made these statements in the colloquy, Riniker has not shown that his misunderstanding persisted as he formed and delivered his decision. The misunderstanding seems to have been resolved in the colloquy when Riniker's counsel responded to the arbitrator by correcting his statements. Counsel explained both that *McDonnell Douglas* is a test for summary judgment and that "there are multiple reasons why [UHG] would be liable," notwithstanding the drug policy incident. The arbitrator replied that he accepted counsel's explanation. Moreover, the arbitrator's opinion does not contain statements similar to the ones he made in the colloquy. The purported misunderstanding of the law is evident only in the colloquy. Rinker cites to no case in which an arbitration award was vacated because the arbitrator misstated the law during a colloquy. Furthermore, even if the arbitrator had misapplied the law, the Court cannot vacate the award because "claim[s] that the arbitrator disregarded the law[] are not included among those specifically enumerated in § 10 [of the FAA] and are therefore not cognizable." *Medicine Shoppe*, 614 F.3d at 489.

Finally, Riniker argues that the arbitrator's handling of her MHRA reasonable accommodation claim was insufficient. Riniker broadly asserts that the arbitrator failed to undertake an analysis of the claim. However, the decision shows that the arbitrator addressed the claim and considered some of the facts underlying it. The decision describes several instances in which Riniker received accommodations from UHG and concludes that her MHRA reasonable accommodation claim failed "because UHG did, in fact, accommodate all her legitimate

requests." Even if the arbitrator could or should have explained his conclusion and its basis more fully, this failure is not grounds to vacate the award.

More specifically, Riniker argues that the arbitrator failed to acknowledge that, under the MHRA, UHG was required to adjust her deadlines to her leaves of absence instead of disciplining her for missing deadlines. However, the arbitrator did address this issue, finding that, "[a]s part of her accommodation, Ms. Leone and Ms. Lyon reduced Ms. Riniker's workload by redistributing some of her projects having tight deadlines to other team members."

Riniker also argues that the arbitrator misapplied the MHRA because doctors' notes are not required for accommodations under the MHRA and yet the arbitrator assumed that UHG only had to accommodate requests supported by a doctor's note. Riniker's argument appears to be based on the arbitrator's finding that Riniker was granted the ability to work from home pursuant to her doctor's restrictions and, "[a]lthough Ms. Riniker desired to work from home additional days if she had pain, she never obtained or provided . . . a doctor's note supporting that preference." Nothing in the arbitrator's decision indicates that this parenthetical observation was significant to the determination that UHG did not violate the MHRA. In any event, employers may require documentation, such as doctors' notes, when the requested accommodation is not obvious. *See Evanson v. Safe Haven Shelter*, No. 12-cv-1195, 2014 WL 1303686, at *10 (D. Minn. Mar. 31, 2014) ("[O]ur cases have consistently held that disabled employees must make their employers aware of any nonobvious, medically necessary accommodations with corroborating evidence such as a doctor's note or at least orally relaying a statement from a doctor . . . .") (quoting *Ekstrand v. Sch. Dist. of Somerset,* 583 F.3d 972, 976 (7th Cir.2009)). Riniker has not shown that it was erroneous for the arbitrator to assume that her requested accommodations were not obvious at the time she made them. Furthermore, even if the

arbitrator erred and misapplied the law, claims that the arbitrator disregarded the law are not

cognizable. *See Medicine Shoppe*, 614 F.3d at 489.

## C.  The Public Policy Exception

Riniker also seeks to vacate the award under the public policy exception to the judicial

enforcement of arbitral awards. Under this narrow exception, courts cannot enforce an arbitral

award that is contrary to a "well defined and dominant" public policy, which is "ascertained by

reference to the laws and legal precedents and not from general considerations of supposed

public interests." *W.R. Grace & Co. v. Rubber Workers,* 461 U.S. 757, 766 (1983) (quotation

marks omitted). In applying the exception, the issue is not whether the arbitrator's reasoning or

analysis violates public policy but whether the arbitrator's decision itself does. *See Boehringer*

*Ingelheim Vetmedica, Inc. v. United Food & Commercial Workers*, 739 F.3d 1136, 1141 (8th

Cir. 2014) ("[T]his narrow exception focuses . . . on whether the arbitrator's decision to reinstate

[the employee] would violate public policy."); *Air Methods Corp. v. OPEIU*, 737 F.3d 660, 669

(10th Cir. 2013) *cert. denied*, 134 S. Ct. 2295 (2014) ("The public policy rationale for refusing to

enforce an arbitration award is a limited exception in which we ask only whether the award itself

(i.e., reinstatement), and not the underlying reasons for the award, violate[s] public policy.")

(quotation marks omitted)).

Here, Riniker questions the quality of the arbitrator's analysis, but not the decision itself.

She argues in her brief that the exception should apply because "the absence of specific findings

and a reasoned analysis in the arbitrator's Opinion . . . is itself evidence that the arbitrator failed

to apply the correct legal standards." However, she does not identify a clear, dominant public

policy that the award itself violates. Her arguments are better suited to the defunct manifest

disregard for the law standard, under which a court could set aside an award when "the arbitrators were fully aware of the existence of a clearly defined governing legal principle, but refused to apply it, in effect, ignoring it." *Stark v. Sanberg, Phoenix & von Gontard, P.C.,* 381 F.3d 793, 802 (8th Cir. 2004). However, the Eighth Circuit has held that manifest disregard no longer provides valid grounds to vacate an arbitration award and manifest disregard is not the standard of review for a public policy challenge. *Air Line Pilots Ass'n Int'l v. Trans States Airlines, LLC*, 638 F.3d 572, 578–79 (8th Cir. 2011).

### D. Enforceability of the Arbitration Agreement

Riniker also argues in the alternative that, if the arbitration agreement's clause on the judicial standard of review is unenforceable, then the entire agreement is unenforceable and the arbitration award must be vacated. Having previously stated in this order that the clause is unenforceable, the Court now turns to analyzing Riniker's argument.

Under Minnesota law, "[i]f part of an agreement is unenforceable, a court may enforce the rest of the agreement in favor of a party who did not engage in serious misconduct if the performance as to which the agreement is unenforceable is not an essential part of the agreed exchange." *Alexander v. Bond*, No. 04-cv-1323, 2005 WL 2406031, at *5 (D. Minn. Sept. 29, 2005) (quoting *Guercio v. Prod. Automation Corp.*, 664 N.W. 2d 379, 385 (Minn. Ct. App. 2003). This inquiry requires ascertaining the intent of the parties. *Id.* To find the parties' intent, the Court must first look to the language of the contract. *Guercio*, 664 N.W.2d at 385. If the language is ambiguous, the Court may consider extrinsic evidence. *Id.*

The unenforceable clause states that "the standard of review to be applied to the arbitrator's findings of fact and conclusions of law will be the same as that applied by an

13

appellate court reviewing a decision of a trial court sitting without a jury." Several aspects of the contract suggest the parties intended the clause to be severable. First, the parties agreed to a severability clause, which shows that they clearly contemplated that at least some clauses could become unenforceable and severable. Second, the agreement's statement of intent, which says nothing about judicial review, states that the purpose of the agreement is to ensure employment disputes are arbitrated because arbitration "usually results in quicker, less costly resolution of disagreements than litigation in state or federal courts." Removing the clause on the judicial standard of review does not impede this basic purpose of the agreement. In fact, removing the clause does not alter any of the parties' performance obligations or interfere with the application of any other provisions in the agreement. With or without the clause, the parties must still arbitrate their disputes before filing motions to confirm or vacate in court, and the process before the arbitrator remains the same. *See Kyocera Corp. v. Prudential-Bache Trade Services, Inc.*, 341 F.3d 987, 1001–02 (9th Cir. 2003) (finding that "unlawful expanded scope-of-review terms should be severed from the remainder of the arbitration clause" because "the flaw manifest in the terms of appellate review does not permeate any other portion of the arbitration clause, and the review provisions are not interdependent with any other").

Riniker has filed an affidavit in which she asserts: "I viewed, and still view, this judicial review language as an essential component of the arbitration process under UnitedHealth Group's Employment Arbitration Policy." Riniker's subjective views of the agreement are irrelevant under Minnesota law, which follows the objective theory of contract formation. *See Asia Pac. Indust. Corp. v. Rainforest Cafe, Inc.*, 380 F.3d 383, 385 (8th Cir. 2004). Riniker points to nothing in the agreement itself or the extrinsic circumstances that objectively shows the one-sentence clause on the judicial standard of review is an essential term.

14

Riniker's reliance on the doctrines of frustration of purpose and impossibility of performance faces similar problems. "These doctrines have at their core a requirement that some event must occur, the nonoccurrence of which was a basic assumption of the contract at the time it was made." *See J.J. Brooksbank Co., Inc. v. Budget Rent-A-Car Corp.*, 337 N.W.2d 372, 377 (Minn. 1983). For these doctrines to apply, Riniker must show that the clause on the judicial standard of review was a basic assumption of the agreement that was "so completely the basis of the contract that, as both parties understand, without it the transaction would make little sense." *Pieper*, *Inc. v. Land O'Lakes Farmland Feed, LLC*, 390 F.3d 1062, 1065 (8th Cir. 2004) (quotation marks omitted). Just as the clause is not an essential part of the agreement, it is not a basic assumption of the contract without which the agreement would make little sense. Accordingly, the Court finds that the clause on the judicial standard of review is severable from the arbitration agreement and the remainder of the agreement is enforceable.

### E.  Attorneys' Fees

Defendants' have moved for attorneys' fees. Absent statutory authorization or a contractual agreement between the parties, the American rule is that each party in federal litigation pays its own attorneys' fees. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 247, 263–64 (1975). Nothing in the FAA authorizes attorneys' fees. *See FBR Capital Markets & Co. v. Hans*, 12 F. Supp. 3d 59, 61 (D.D.C. 2014). Defendants do not assert that any of the statutes underlying the causes of action support attorneys' fees. The arbitration agreement provides that the arbitrator can award attorneys' fees where authorized by statute and where the arbitrator finds the employee's demand for arbitration was in bad faith. However, the agreement is silent with respect to whether a court hearing motions to confirm or vacate an arbitration award can grant attorneys' fees. Because the FAA, the parties' arbitration agreement, and the

15

statutes supporting the underlying claims do not authorize a court to award attorneys' fees, Defendants cannot receive attorneys' fees now.

UHG's reliance on the MUAA's provision on attorneys' fees is misplaced. Minn. Stat. § 572B.25(c). As stated earlier, "the construction of an agreement to arbitrate is governed by the Federal Arbitration Act unless an agreement expressly provides that state law should govern." *ING Financial Partners*, 446 F.3d at 779. Here, the agreement does not expressly reference the MUAA or otherwise make clear that the FAA does not apply. Thus, the FAA, which contains no attorneys' fee provision, applies.

## CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Plaintiff's motion to vacate the arbitration award [Docket No. 29] is DENIED.

2. Defendants' motions to confirm the arbitration award [Docket Nos. 42 and 45] are GRANTED, except that the requests for attorneys' fees are DENIED.

3. The arbitration award is CONFIRMED, and the case is DISMISSED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  April 20, 2015

s/Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge

16